## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DAN CHEATHAM, BRIAN KUHN, and ERIC CABLER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. <u>1:26-cv-330</u> |
| vs. | ) ) | |
| THE KROGER CO., WERNER TRUCKING COMPANY f/k/a WERNER ENTERPRISES, INC, SWIFT TRANSPORTATION SERVICES, LLC, and U.S. XPRESS ENTERPRISES, INC., | ) ) ) ) ) ) | **CLASS ACTION COMPLAINT** |
| Defendants. | ) ) ) | **JURY DEMANDED** |

Dan Cheatham, Brian Kuhn, and Eric Cabler (collectively, the "Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees of Quickway Transportation, Inc. as defined herein, bring this Class Action Complaint against The Kroger Co. ("Kroger"), Werner Trucking Company f/k/a Werner Enterprises, Inc. ("Werner"), Swift Transportation Services, LLC ("Swift") and U.S. Xpress Enterprises, Inc. ("U.S. Xpress") (collectively, the "Defendants"), and allege as follows:

### <u>NATURE OF THE ACTION</u>

1. This is a Class Action Complaint brought under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by Plaintiffs on their own behalf and on behalf

of the other similarly situated commercial truck drivers who had been employed by Quickway Transportation, Inc. ("Quickway").  Quickway is in bankruptcy, has ceased all operations, and has terminated the employment of all its commercial truck drivers.  The action challenges under Section 1 of the Sherman Act an unlawful contract, combination or conspiracy between Defendants pursuant to which Kroger directed, and Werner, Swift, and U.S. Xpress agreed, not to hire, recruit, solicit, or employ former Quickway drivers (respectively, the Werner, Swift, and U.S. Xpress "no-hire agreements").

2.      Defendants operate logistics networks and compete for commercial truck drivers.  Quickway was a trucking carrier that, for years, provided dedicated transportation services to Kroger under a long-term logistics contract. Quickway's drivers were represented by a labor union, the International Brotherhood of Teamsters, through its local unions. In February 2026, Quickway's bankruptcy left its commercial truck driver workforce unemployed and seeking work elsewhere.

3.      In the wake of Quickway's bankruptcy, representatives of Kroger made false representations that the company was concerned for the drivers' job security and was looking for avenues to assist them.  Around the same time, Kroger entered into new dedicated transportation contracts with Werner, Swift and U.S. Xpress to replace its contract with Quickway.  Under the contracts, Werner, Swift and U.S. Xpress took over logistics responsibilities covering the same geographic service territory and routes that Quickway had serviced.

4.      Werner, Swift, and U.S. Xpress actively recruited commercial drivers for the new Kroger contracts.  Former Quickway drivers, including named Plaintiffs and members of the putative class, applied for these positions.  Plaintiffs and members of the putative class met all necessary qualifications and, in fact, had been performing identical or nearly identical jobs for Quickway.

5.      At or about the same time that Kroger entered into the contracts with Werner, Swift and U.S. Xpress, Kroger instructed Werner, Swift, and U.S. Xpress not to hire, recruit, solicit, or employ former Quickway drivers, and Werner, Swift, and U.S. Xpress agreed not to not to hire, recruit, solicit, or employ these drivers.

6.      Representatives of Werner, Swift, and U.S. Xpress acknowledged to Plaintiffs that they had been instructed by Kroger not to hire former Quickway drivers at the time they rejected Plaintiffs' job applications.  Plaintiffs were told there was "a gentlemen's agreement" and that it "came from the top."

7.      At all relevant times, Kroger operated and continues to operate its own fleet of vehicles and regularly employs its own drivers to support its supply-chain distribution network.  Kroger has outsourced as well as insourced its logistics operations on multiple occasions around the country.  Companies that contract with Kroger to provide logistics services understand that Kroger is an actual current competitor in many parts of the country, including areas in which they have operations.  At all relevant times, Kroger was and is a competing buyer of commercial driver labor services.

8.      Moreover, the impact of the no-hire agreements was magnified, as both Werner, Swift, and U.S. Xpress were both reasonable employment options for former Quickway drivers. There is a permissible inference to be drawn that there was, in fact, one overarching agreement, and all three Defendants understood at the time they entered the agreement that none would hire the drivers.  This inference becomes more plausible because if only Werner or U.S. Xpress had entered into a no-hire agreement, it would have deprived itself of a source of labor while its competitor was not so constrained.  It therefore was in the mutual interest of Werner, Swift, and U.S. Xpress to know that both, not just one, were bound by the agreement with Kroger.

9.      No-hire agreements between Kroger, Werner, Swift, and U.S. Xpress are naked, horizontal agreements between competing buyers of commercial driver labor services.  Such agreements constitute a per se unlawful restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1.

10.     As a direct and proximate result of Defendants' unlawful agreements, Plaintiffs and the putative class of former Quickway drivers suffered substantial harm, including loss of employment, suppression of wages and earning potential, restriction of their ability to obtain comparable employment in the commercial transportation industry, and deprivation of the competitive bidding for their labor services to which they were entitled under federal antitrust law.

## **JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15, as this action arises under the Sherman Antitrust Act, 15 U.S.C. § 1.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 22, because one or more Defendants transact business within this District, because a substantial part of the events giving rise to these claims occurred within this District, and because Kroger's principal place of business and corporate headquarters is located in Cincinnati, Ohio, within the Southern District of Ohio.

13. This Court has personal jurisdiction over each Defendant because each Defendant transacts business in this District, has entered into agreements and engaged in conduct with effect in this District, and/or is headquartered or domiciled in this District. Specifically, Werner operates a major terminal in Springfield, Ohio and regularly runs routes and delivers products throughout Ohio, including in the Southern District of Ohio. Similarly, Swift operates a terminal out of Columbus, Ohio and regularly runs routes and delivers products throughout Ohio, including in the Southern District of Ohio. Similarly, U.S. Xpress operates a terminal out of Springfield, Ohio and regularly runs routes and delivers products throughout Ohio, including in the Southern District of Ohio.

**PARTIES**

14. Plaintiff **Dan Cheatham** is a resident of the State of Indiana in Shelby County. Dan Cheatham was employed as a commercial truck driver by Quickway Transportation, Inc. and was dispatched from and regularly reported to Quickway's terminal located in Shelbyville, Indiana (the "Shelbyville Terminal") at all relevant times prior to Quickway's cessation of operations. Dan Cheatham applied for employment with one or more Defendants, and was rejected on the basis of

5

Defendants' no-hire agreements. Dan Cheatham is a member of the putative class and suffered antitrust injury as a direct result of Defendants' unlawful conspiracy.

15. Plaintiff **Brian Kuhn** is a resident of the State of Indiana in Shelby County. Brian Kuhn was employed as a commercial truck driver by Quickway Transportation, Inc. and was dispatched from and regularly reported to the Shelbyville Terminal at all relevant times prior to Quickway's cessation of operations. Brian Kuhn applied for employment with one or more Defendants, and was rejected on the basis of Defendants' no-hire agreements. Brian Kuhn is a member of the putative class and suffered antitrust injury as a direct result of Defendants' unlawful conspiracy.

16. Plaintiff **Eric Cabler** is a resident of Lynchburg, Virginia. Eric Cabler was employed as a commercial truck driver by Quickway Transportation, LLC. and was dispatched from and regularly reported to the Lynchburg Terminal at all relevant times prior to Quickway's cessation of operations. Eric Cabler applied for employment with one or more Defendants, and was rejected on the basis of Defendants' no-hire agreements. Eric Cabler is a member of the putative class and suffered antitrust injury as a direct result of Defendant's unlawful conspiracy.

17. Defendant **The Kroger Co.** is an Ohio corporation with its principal place of business and corporate headquarters located at 1014 Vine Street, Cincinnati, OH 45202. Kroger is one of the largest supermarket chains in the United States by revenue and one of the world's largest retailers. Kroger may be served through its registered agent in Ohio, Corporation Service Company, 1160 Dublin Rd, Suite 400

6

Columbus, OH 43215. At all relevant times, Kroger engaged Quickway, and subsequently Werner, Swift, and U.S. Xpress, to provide dedicated transportation and logistics services for Kroger's supply chain operations.

18.     Defendant **Werner Trucking Company f/k/a Werner Enterprises, Inc.** is a Nebraska corporation with its principal place of business located at 14507 Frontier Road, Omaha, Nebraska 68138. Werner is one of the largest truckload transportation and logistics companies in the United States. Werner may be served through its registered agent in Ohio, Corporation Creations Network, Inc. 119 E Court St., Cincinnati, OH 45202. Following Quickway's bankruptcy, Werner entered into one or more transportation services agreements with Kroger and, upon information and belief, agreed as part of or in connection with those agreements not to hire former Teamsters represented Quickway drivers.

19.     Defendant **Swift Transportation Services, LLC** is a Delaware company with its principal place of business located at 2200 South 75th Ave., Phoenix, AZ 85043. It may be served via its registered agent in Ohio, National Registered Agents, Inc., 4400 Eason Commons Way, Suite 125, Columbus, OH 43219. Swift is a major nationwide truckload carrier. Following Quickway's bankruptcy, Swift entered into one or more transportation services agreements with Kroger, and upon information and belief, agreed as part of or in connection with those agreements not to hire former Teamsters represented Quickway drivers.

20.     Defendant **U.S. Xpress Enterprises, Inc.** is a Tennessee corporation with its principal place of business located at 7031 Middlebrook Pike, Knoxville, TN

37909. U.S. Xpress is a major nationwide truckload carrier. U.S. Xpress may be served through its registered agent in Ohio, Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, OH 43215. Following Quickway's bankruptcy, U.S. Xpress entered into one or more transportation services agreements with Kroger and, upon information and belief, agreed as part of or in connection with those agreements not to hire former Teamsters represented Quickway drivers.

**FACTUAL ALLEGATIONS**

21.     Kroger operates one of the largest private supply chain and logistics networks in the United States, servicing hundreds of retail grocery stores across the country. A core component of Kroger's logistics network is its dedicated transportation contracts with third-party trucking carriers who provide dedicated driver labor and equipment to move Kroger merchandise between distribution facilities and retail stores. Kroger also operates its own fleet of vehicles and regularly employs its own drivers to support its supply-chain distribution network.

22.     For a substantial period of time prior to the events giving rise to this Complaint, Kroger engaged Quickway Transportation, Inc. as a dedicated transportation provider under one or more transportation services agreements. Pursuant to those agreements, Quickway furnished commercial truck drivers to perform dedicated haul services for Kroger's supply chain operations, including from and through the Shelbyville, Indiana terminal and surrounding service areas. Quickway furnished similar services through its terminals in Michigan and Virgina, including the terminal in Lynchburg, Virginia.

23. Quickway's commercial drivers dispatched from the Shelbyville Terminal were represented by Teamsters Local 135 labor union and worked under a collective bargaining agreement. Likewise, Quickway's commercial drivers dispatched from the Lynchburg Terminal were represented by Teamsters Local 171 labor union and worked under a collective bargaining agreement. Kroger was aware of the unionized status of Quickway's driver workforce at all relevant times. Quickway's terminals in Michigan and Virginia operated similarly.

24. At all relevant times, the former Quickway drivers — including Plaintiffs and the putative class — were experienced, licensed, and qualified commercial truck drivers who were able, ready, and willing to perform the same or similar transportation services for Kroger or its third-party logistics providers.

25. By January 2026, Quickway was experiencing severe financial difficulties that led the company to cease operations, including all operations at the Shelbyville Terminal. On January 26, 2026, Quickway filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee. It terminated all of its drivers in February of 2026. Although initially filed as a Chapter 11 proceeding, Quickway converted the bankruptcy to a Chapter 7 proceeding by agreed order on March 2, 2026. On information and belief, Quickway has no realistic hope of resuming operations and has no going concern business operations in need of protection.

26.     Upon their termination from Quickway, the former Quickway drivers were free agents in the commercial trucking labor market, available to be hired by any carrier willing to employ them.

27.     Following Quickway's cessation of operations, Kroger labor representatives engaged in conversations with Teamsters representatives to supposedly find a solution to retain the Teamsters represented Quickway drivers.  At around the same time, Kroger sought to replace Quickway's transportation services by entering into new dedicated carrier agreements with Werner, Swift, and U.S. Xpress. These agreements covered, in whole or in part, the same geographic service territory and routes previously serviced by Quickway, including but not limited to routes serviced from the Shelbyville, Indiana area and the Lynchburg, Virginia area.

28.     Upon information and belief, as part of, as a condition of, or as a contemporaneous arrangement with the execution of the new transportation services agreements between Kroger and Werner and between Kroger and U.S. Xpress, Kroger communicated to Werner, Swift, and U.S. Xpress — expressly, in writing, orally, or through the clear terms and implications of the parties' course of dealing — that Werner, Swift, and U.S. Xpress were not to hire, recruit, solicit, or employ former Quickway drivers.

29.     Upon information and belief, Werner, Swift, and U.S. Xpress agreed to and complied with this no-hire directive. Werner, Swift, and U.S. Xpress refused to hire, consider for hire, or employ former Quickway drivers including but not limited to the Shelbyville or Lynchburg Terminal — including Plaintiffs and the putative

class — not because of any individual driver's qualifications, performance, or fitness for employment, but solely because of the no-hire agreements with Kroger.

30. The agreements by and between Kroger, Werner, and U.S. Xpress not to hire former Quickway drivers were not the product of any unilateral business decision by any single Defendant. Representatives of Werner, Swift, and U.S. Xpress acknowledged to Plaintiffs that they had been instructed by Kroger not to hire former Quickway drivers at the time they rejected Plaintiffs' job applications. Plaintiffs were additionally told that there was "a gentlemen's agreement" and that it "came from the top."

31. Upon information and belief, the no-hire agreements may have been motivated in part by Kroger's desire to reduce the percentage of drivers represented by organized labor, including both its own drivers and drivers working for third-party logistics companies under contract. Such motivation, even if true, does not provide any justification for the no-hire agreements.

32. Upon information and belief, Kroger is aware that union affiliated drivers tend to earn higher wages than non-union drivers, and Teamsters affiliated drivers are better positioned to negotiate higher wages and better benefits than non-union drivers. Kroger has impermissibly sought, directly and indirectly, to suppress wages and benefits as part of its anti-union strategy and through its no-hire agreements.

33. Upon information and belief, Werner, Swift, and U.S. Xpress employ non-union drivers. Werner, Swift, and U.S. Xpress may have been motivated in part

to agree with Kroger not to hire former Quickway drivers because those drivers had previously been part of a labor union.  Such motivation, even if true, does not provide any justification for the no-hire agreements.

34.    The no-hire agreements by and between Defendants are naked horizontal agreements between competing employers that interfere with worker mobility in the commercial trucking driver labor market. They directly suppress competition for the labor services of former Quickway drivers, deprive those drivers of the benefits of competitive bidding for their services among multiple potential employers, and artificially depresses their wages and employment opportunities.

35.    The line of commerce affected by the illegal agreements is dedicated truckload transportation services. The sections of the country affected by the illegal agreements extend at least as far as the areas where Quickway operated, including Indiana, Michigan, and Virginia. Drivers with commercial driver's licenses (CDL) and experience in dedicated grocery or retail supply chain transportation are the relevant sellers of their labor, and commercial carriers and shippers including all Defendants are the relevant buyers of that labor.

36.    Kroger, Werner, and U.S. Xpress are competing buyers of commercial driver labor services. Any agreement by and between these companies to refuse to hire available drivers constitutes a horizontal agreement among buyers at the same level of the market, within the scope of *per se* condemnation under Section 1 of the Sherman Act.

## CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring their Sherman Act claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class (the "Class"):

> All former commercial truck drivers employed by Quickway Transportation, Inc. and dispatched from or assigned to Quickway's terminals in Indiana, Michigan, and Virginia whose employment with Quickway ended upon or following Quickway's cessation of operations and who were, upon information and belief, subject to Defendants' no-hire agreements.

38.     Class Action treatment of Plaintiffs' Sherman Act claims is appropriate because all of Federal Rule of Civil Procedure 23's requisites can be satisfied.

39.     The Class includes, upon information and belief, over 100 former Quickway drivers who were dispatched from the Quickway terminals in Indiana, Michigan, and Virginia and is therefore so numerous that joinder of all class members is impracticable, satisfying Federal Rule of Civil Procedure 23(a)(1).

40.     Questions of law and fact are common to the Class, including, *inter alia*, whether: (i) Defendants entered into an agreement, combination, or conspiracy not to hire former Quickway drivers; (ii) such agreement, combination, or conspiracy constitutes a per se violation of Section 1 of the Sherman Act as a naked no-hire agreement; and (iii) the Class members suffered antitrust injury and the appropriate measure of damages, thereby satisfying Federal Rule of Civil Procedure 23(a)(2).

41.     Plaintiffs are members of the Class and their claims are typical of the claims of the other Class members. Plaintiffs were employed as drivers at one of the Quickway Terminals, were subject to the no-hire agreements, and suffered the same

type of antitrust injury as the other Class members, satisfying Federal Rule of Civil Procedure 23(a)(3).

43. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to or in conflict with the interests of other Class members. Plaintiffs have retained competent and experienced counsel in complex class action and antitrust litigation who will effectively represent the interests of the Class, satisfying Federal Rule of Civil Procedure 23(a)(4).

43. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants.

44. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants acted on grounds generally applicable to the Class — namely, the blanket refusal to hire any former Quickway driver because of the no-hire agreements — making declaratory and injunctive relief appropriate with respect to the Class as a whole.

45. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact — particularly the existence, scope, and anticompetitive effects of the no-hire conspiracy — predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this

14

controversy given the number of affected drivers and the common nature of the injury.

<strong><u>COUNT I</u></strong><br>
<strong>VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT 15<br>
U.S.C. § 1 — <em>PER SE</em> UNLAWFUL RESTRAINT OF TRADE</strong><br>
<strong>(On Behalf of Plaintiffs and the Class)</strong>

46. Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

47. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1.

48. Defendants entered into a contract, combination, or conspiracy — the no-hire agreements — under which Kroger, Werner, and U.S. Xpress agreed not to hire, recruit, solicit, or employ former Quickway drivers.

49. The no-hire agreements by and between Defendants are naked horizontal agreements between competing buyers of commercial driver labor services, which the U.S. Department of Justice has characterized as *per se* illegal under Section 1 of the Sherman Act.

50. The nonstatutory labor exemption does not apply. Quickway is defunct. No surviving collective bargaining agreement governs the parties' conduct. The former Quickway drivers are not members of any bargaining unit with respect to any Defendant. The no-hire agreements are not the product of good-faith collective bargaining and serve no legitimate labor-organizing purpose. Under *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616

15

(1975), the absence of any collective bargaining nexus strips the no-hire agreements of any labor exemption protection and subjects them to the full force of the Sherman Act.

51.     The no-hire agreements have had, and continue to have, substantial anticompetitive effects. They have: (a) eliminated competition among Defendants for the labor services of the Class of former Quickway drivers; (b) suppressed the wages and employment opportunities available to Class members; (c) denied Class members the benefit of competitive bidding for their services; and (d) foreclosed Class members from employment with the principal available buyers of commercial driver labor in their geographic area.

52.     The no-hire agreements serve no legitimate, procompetitive purpose. Defendants cannot rely on any employee non-compete provisions that may have been in the agreement between Kroger and Quickway, even assuming arguendo that the Kroger-Quickway agreement contained employee non-compete restraints.  At all times relevant herein, Quickway had no ongoing operations or commercial truckdriver employees, and no legitimate interest in restricting the mobility of its former employees.

53.     The no-hire agreements are in, and substantially affect, interstate commerce within the meaning of 15 U.S.C. § 1, as Defendants are interstate carriers and shippers whose transportation operations and hiring practices cross state lines.

54.     As a direct and proximate result of Defendants' unlawful conspiracy in violation of Section 1 of the Sherman Act, Plaintiffs and the Class have suffered

16

antitrust injury, including lost wages, lost employment opportunities, and suppression of compensation in an amount to be proven at trial. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Plaintiffs and the Class are entitled to recover treble damages, costs of suit, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully pray for the following relief:

a.    Certification of this action as a Class Action pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2), and/or (b)(3), designation of Plaintiffs as Class Representatives, and appointment of their counsel as Class Counsel;

b.    A judgment finding and declaring that Defendants violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by entering into and implementing a per se unlawful no-hire agreement;

c.    An award of treble damages against Defendants and in favor of Plaintiffs and the Class for all actual damages suffered as a result of Defendants' antitrust violations, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, in an amount to be determined at trial;

d.    An award of injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, permanently enjoining Defendants and their agents, officers, employees, and successors from entering into, maintaining, or enforcing any agreement, arrangement, or understanding not to hire, recruit, or employ former

Quickway drivers or any other identified class of commercial drivers, including based on their former union affiliation or status;

e.      An award of costs of suit and reasonable attorneys' fees pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15; and

f.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs, on behalf of themselves and the Class, hereby demand trial by jury on all issues so triable.

Dated:       April 2, 2026

*/s/ Alyson Steele Beridon*
Alyson Steele Beridon (OH #0087496)
Trial Attorney
**Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC**
600 Vine Street, Suite 2720
Cincinnati, Ohio 45202
Phone: (513) 381-2224
Fax: (615) 994-8625
Email: alyson@hsglawgroup.com

Benjamin A. Gastel* (TN #28699)
**Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC**
1920 Adelicia Street, Suite 300
Nashville, TN 37212
Phone: (615) 716-9163
Fax: (615) 994-8625
Email: ben@hsglawgroup.com

*Attorneys for Plaintiff and the Class*

***Pro Hac Vice forthcoming**

18