**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DAN CHEATHAM, BRIAN KUHN, and ERIC CABLER, on behalf of themselves and all others similarly situated, | : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| THE KROGER CO., SWIFT TRANSPORTATION SERVICES, LLC, SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and U.S. XPRESS, INC., | : : : : : |
| Defendants. | : : : : |

No. 1:26-cv-330-JPH

Judge Jeffery P. Hopkins
Magistrate Judge Karen L. Litkovitz

ORAL ARGUMENT REQUESTED

**THE KROGER CO.'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT UNDER
<u>RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

The Kroger Co. ("Kroger") hereby moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' First Amended Class Action Complaint. The reasons supporting Kroger's motion are included in the accompanying memorandum of law. Kroger respectfully requests that this Court hold oral argument on its motion.

**WHEREFORE**, Kroger respectfully requests that the Court: (i) grant Kroger's motion to dismiss; and (ii) dismiss plaintiffs' First Amended Class Action Complaint.

1

Respectfully submitted,

**DINSMORE & SHOHL LLP**

July 16, 2026

By: /s/ *Jeremy D. Smith*
Jeremy D. Smith
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
T: (513) 977-8348
Jeremy.Smith@Dinsmore.com

Peter M. Ryan (admitted *pro hac vice*)
Jason A. Kurtyka
Owen E. Healy (admitted *pro hac vice*)
**COZEN O'CONNOR**
1650 Market Street, Suite 2800
Philadelphia, PA 19103
T: (215) 665-2000
pryan@cozen.com
jkurtyka@cozen.com
ohealy@cozen.com

*Counsel for Defendant The Kroger Co.*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **DAN CHEATHAM, BRIAN KUHN, and ERIC CABLER,** on behalf of themselves and all others similarly situated, | : : : : : | |
| **Plaintiffs,** | : : : | **No. 1:26-cv-330-JPH** |
| | : : | **Judge Jeffery P. Hopkins** **Magistrate Judge Karen L. Litkovitz** |
| **v.** | : : : | |
| **THE KROGER CO., SWIFT TRANSPORTATION SERVICES, LLC, SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and U.S. XPRESS, INC.,** | : : : : : : | **ORAL ARGUMENT REQUESTED** |
| **Defendants.** | : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE KROGER CO.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    THE ALLEGATIONS IN THE AMENDED COMPLAINT ............................. 3

      A.    After Quickway's 2026 Bankruptcy, Kroger Entered into Dedicated Transportation Contracts with the Trucking Defendants to Service "the Same Geographic Service Territory and Routes Previously Serviced by Quickway." ............................................................................................... 3

      B.    Plaintiffs Allege That Kroger Issued a No-Hire Directive "From the Top" and That Each Trucking Defendant Complied with Kroger's Directive. ............... 4

      C.    The Amended Complaint Attempts to Make This Vertical Arrangement Horizontal by Alleging Kroger Operates Its Own Proprietary Trucking Fleet "Elsewhere." ......................................................................................... 5

      D.    The Amended Complaint Alleges No Actual Horizontal Agreement Among Competitors. .......................................................................................... 6

III.   LEGAL STANDARD........................................................................................... 7

IV.   ARGUMENT....................................................................................................... 7

      A.    The Alleged Restraint Is Vertical and Subject to the Rule of Reason. ................... 8

      B.    Plaintiffs Do Not Appear to Be Attempting Hub-and-Spoke Allegations, but Even If They Were, Such a Claim Fails. ........................................................ 11

      C.    Plaintiffs' Attempt to Fit a Manifestly Vertical Restraint Into a *Per Se* Box Fails........................................................................................................ 12

            1.    Plaintiffs Fail to Allege an Agreement Among Competitors.................... 13

            2.    The *Per Se* Rule Is Limited to Specific, Well-Understood Restraints. Bespoke, Multi-Level, or "Dual Distribution" Restraints Implicate the Rule of Reason. ................................................ 15

      D.    Plaintiffs Do Not Plead a Rule of Reason Claim................................................. 18

V.    CONCLUSION................................................................................................... 19

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.,*
  300 F.3d 620 (5th Cir. 2002) ........................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................7

*Bogan v. Hodgkins,*
  166 F.3d 509 (2d Cir. 1999)..........................................................................14

*Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.,*
  441 U.S. 1 (1979)......................................................................................15, 17

*Care Heating & Cooling, Inc. v. Am. Standard, Inc.,*
  427 F.3d 1008 (6th Cir. 2005) ......................................................................10

*Copperweld Corp. v. Independence Tube Corp.,*
  467 U.S. 752 (1984)..................................................................................11, 18

*Davis-Watkins Co. v. Serv. Merch.,*
  686 F.2d 1190 (6th Cir. 1982) ......................................................................16

*Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co.,*
  833 F.2d 606 (6th Cir. 1987) ........................................................................11

*DirecTV, Inc. v. Treesh,*
  487 F.3d 471 (6th Cir. 2007) ..........................................................................7

*Double D Spotting Service, Inc. v. Supervalu, Inc.,*
  136 F.3d 554 (8th Cir. 1998) ........................................................................14

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.,*
  129 F.3d 240 (2d Cir. 1997)......................................................................16, 17

*Expert Masonry, Inc. v. Boone County, Kentucky, Fiscal Court,*
  440 F.3d 336 (6th Cir. 2006) ....................................................................18, 19

*Gen. Aviation, Inc. v. Garrett Corp.,*
  743 F. Supp. 515 (W.D. Mich. 1990) ............................................................16

ii

*Hesco Parts, LLC v. Ford Motor Co.,*
    No. 02-cv-736, 2006 WL 2734429 (W.D. Ky. 2006)......................................................15, 16, 17

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.,*
    48 F.4th 656 (6th Cir. 2022) ..................................................................................................7, 17

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010)........................................................................................................18

*In re Southeastern Milk Antitrust Litig.,*
    739 F.3d 262 (6th Cir. 2014) ............................................................................................. *passim*

*In re Southeastern Milk Antitrust Litigation,*
    801 F. Supp. 2d 705 (E.D. Tenn. 2011)....................................................................................9, 10

*Int'l Logistics Grp., Ltd. v. Chrysler Corp.,*
    884 F.2d 904 (6th Cir. 1989) ......................................................................................................16

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,*
    551 U.S. 877 (2007)..................................................................................................................9, 17

*Lim v. Hightower,*
    2025 WL 2965692 (6th Cir. Oct. 21, 2025).................................................................................11

*Medical Center at Elizabeth Place, LLC v. Premier Health Partners,*
    No. 12-cv-26, 2017 WL 3433131 (S.D. Ohio 2017) ...................................................................17

*Medical Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.,*
    922 F.3d 713 (6th Cir. 2019) .........................................................................................................9

*Medpace Inc. v. AVM Biotechnology, Inc.,*
    2026 WL 1256063 (S.D. Ohio May 7, 2026) .................................................................................7

*Michigan Div.-Monument Builders of N. Am. v. Michigan Cemetery Ass'n,*
    524 F.3d 726 (6th Cir. 2008) .......................................................................................................14

*Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club,*
    419 F.3d 462 (6th Cir. 2005) ......................................................................................................8, 9

*NCAA v. Bd. of Regents of Univ. of Okla.,*
    468 U.S. 85 (1984)..........................................................................................................................9

*Newtyn Partners, LP v. Alliance Data Systems Corporation,*
    165 F.4th 947 (6th Cir. 2026) ......................................................................................................11

*Ogden v. Little Caesar Enterprises, Inc.,*
    393 F. Supp. 3d 622 (E.D. Mich. 2019).....................................................................................9, 15

iii

*Ohio v. American Express Co.*,
    585 U.S. 529 (2018)...............................................................................................18

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*,
    19 F. App'x 181 (6th Cir. 2001) ............................................................................13

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997)...............................................................................................9, 15

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006)..................................................................................................18

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) ......................................................................10, 11, 12

*White & White, Inc. v. American Hosp. Supply Corp.*,
    723 F.2d 495 (6th Cir. 1983) ...................................................................................8

**Statutes**

15 U.S.C., § 1...............................................................................................2, 8, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................3, 11

Fed. R. Evid. 201(b)..................................................................................................11

## I.   INTRODUCTION

The Kroger Co. ("Kroger") moves to dismiss plaintiffs' First Amended Class Action Complaint ("Amended Complaint") because it fails to allege a plausible *per se* antitrust claim. The alleged "from the top" no-hire directive from Kroger to its trucking carriers not to hire plaintiffs is vertical, not horizontal, and the rule of reason, not the *per se* rule, applies to vertical agreements. Plaintiffs try to reorient that vertical relationship to fit into the narrow category of restraints subject to *per se* analysis, but the attempt fails.

Plaintiffs Dan Cheatham, Brian Kuhn, and Eric Cabler are commercial truck drivers who used to work for Quickway Transportation, Inc. ("Quickway"). Quickway provided dedicated transportation services to Kroger, or its subsidiaries or affiliates,[1] from Quickway terminals in Shelbyville, Indiana, the State of Michigan, and Lynchburg, Virginia. Am. Compl. ¶¶ 2, 39.[2] In February 2026, Quickway went bankrupt and ceased operations. *Id.* ¶¶ 1-2. According to the Amended Complaint, defendants Swift Transportation Services, LLC, Swift Transportation Co. of Arizona, LLC, and U.S. Xpress, Inc. (collectively, the "Trucking Defendants") took over servicing some of Kroger's logistics needs previously serviced by Quickway. *Id.* ¶ 29.

Plaintiffs are now suing Kroger and the Trucking Defendants over what they claim was a "directive" from Kroger to its carriers not to hire former Quickway drivers. *Id.* ¶ 31. Plaintiffs allege that they applied to work for the Trucking Defendants but were told they would not be hired due to "a gentlemen's agreement" that "came from the top." *Id.* ¶ 32. Plaintiffs allege "on information and belief" that Kroger's refusal to let former Quickway drivers work on its contracted

---

[1] No Kroger subsidiary or affiliate is named as a party in this litigation. Nothing herein is intended to waive Kroger's right to assert any available defense relating to its subsidiaries and affiliates.

[2] Citations to "Am. Compl." refer to the First Amended Class Action Complaint filed at Doc. No. 35.

routes was "part of its anti-union strategy," since Quickway drivers had been represented by the International Brotherhood of Teamsters. *Id.* ¶ 34.

Even though this "directive," *id.* ¶ 31, that "came from the top" from Kroger to its carriers, *id.* ¶ 32, was plainly a vertical arrangement, plaintiffs nonetheless claim the directive constituted "naked horizontal agreements between competing buyers of commercial driver labor services," *id.* ¶ 53. They claim this is so because Kroger allegedly uses its own commercial truck fleet to deliver products through its distribution centers in or near the same states as the former Quickway terminals. *Id.* ¶ 24. Plaintiffs say that these purported horizontal agreements are *per se* unlawful under the Sherman Antitrust Act, 15 U.S.C. § 1.

Plaintiffs fail to allege an actionable *per se* antitrust claim. A vertical directive between entities at different levels of the distribution chain is analyzed under the rule of reason, not the *per se* rule. That is the relationship between Kroger and the Trucking Defendants: Kroger purchases the Trucking Defendants' services to ship its products on identified routes to identified locations. A purchaser-seller relationship is vertical irrespective of whether Kroger conducts its own shipping (on other routes to other locations). Plaintiffs themselves define the relevant geographic areas of commerce as the former "Quickway terminals" and the "dedicated routes those terminals served." *Id.* ¶ 39. Plaintiffs claim that jobs at other terminals are not adequate substitutes.

Plaintiffs do not allege that the Trucking Defendants agreed with *each other* not to hire former Quickway drivers; nor do they allege that Kroger itself agreed with any defendant that *Kroger* would not hire former Quickway drivers. They do not allege that Kroger deploys its own trucking fleet on the routes where its contracted third-party logistics providers ship Kroger's products (and where plaintiffs allegedly sought employment); they do not allege that Kroger operates its own trucking fleet through the terminals from which plaintiffs formerly worked; and

2

they do not allege that any of the allegedly excluded workers sought or could have sought employment with Kroger directly. Plaintiffs simply allege a vertical directive from Kroger to its carriers about whom Kroger would allow to be hired for Kroger-contracted routes.[3]

The *per se* rule is reserved for a narrow category of restraints that experience has proven are always harmful to competition. The rule does not apply any time an upstream purchaser might engage in some, unrelated competition with its downstream suppliers in ways not relevant to the challenged restraint. Where vertical and horizontal elements are mixed, the rule of reason applies. Ancillary participation by Kroger in the trucking labor market does not qualify. This is not a *per se* case.

Because the alleged restraint is vertical, it is unlawful only if it fails the rule of reason. But the Amended Complaint includes no rule of reason claim. Nor do plaintiffs allege the facts required for one—*i.e.*, market power in a properly limited product and geographic market. The Court should dismiss the Amended Complaint.

## II.     THE ALLEGATIONS IN THE AMENDED COMPLAINT

### A.     After Quickway's 2026 Bankruptcy, Kroger Entered into Dedicated Transportation Contracts with the Trucking Defendants to Service "the Same Geographic Service Territory and Routes Previously Serviced by Quickway."

According to the Amended Complaint, Kroger "operates one of the largest private supply chain and logistics networks in the United States, servicing hundreds of retail grocery stores across the country." Am. Compl. ¶ 21. "A core component of Kroger's logistics network is its dedicated transportation contracts with third-party trucking carriers who provide dedicated driver labor and equipment to move Kroger merchandise between distribution facilities and retail stores." *Id.*

---

[3] While Kroger must take plaintiffs' allegation as true under Federal Rule of Civil Procedure 12(b)(6), Kroger denies the existence of the "no-hire" agreement alleged by plaintiffs.

Quickway Transportation, Inc. ("Quickway") "was a trucking carrier that, for years, provided dedicated transportation services to Kroger under a long-term logistics contract." *Id.* ¶ 2. Quickway's drivers were dispatched from, among other places, terminals in Shelbyville, Indiana and Lynchburg, Virginia. *Id.* ¶¶ 24-25. (A few of plaintiffs' allegations also mention the State of Michigan, but plaintiffs do not allege that any named plaintiff worked for Quickway in or near Michigan or that any Trucking Defendant took over Quickway's routes in Michigan. *Id.* ¶¶ 29, 31, 36-37, 39.)

In January 2026, Quickway filed for bankruptcy and, one month later, terminated all of its drivers. *Id.* ¶ 27. Plaintiffs allege that "Kroger sought to replace Quickway's transportation services by entering into new dedicated carrier agreements" with the Trucking Defendants. *Id.* ¶ 29. Kroger's new agreements "covered, in whole or in part, the same geographic service territory and routes previously serviced by Quickway, including but not limited to routes serviced from the Shelbyville, Indiana area and the Lynchburg, Virginia area." *Id.*

**B.    Plaintiffs Allege That Kroger Issued a No-Hire Directive "From the Top" and That Each Trucking Defendant Complied with Kroger's Directive.**

The Amended Complaint alleges that "Kroger instructed Swift and U.S. Xpress not to hire, recruit, solicit, or employ former Quickway drivers, and Swift and U.S. Xpress agreed not to not to [sic] hire, recruit, solicit, or employ these drivers." Am. Compl. ¶ 5. Plaintiffs consistently characterize this as a "directive" that Kroger issued and with which the Trucking Defendants "complied." *Id.* ¶ 31 ("Upon information and belief, Swift and U.S. Xpress agreed to and complied with this no-hire directive."); *id.* ¶ 1 ("Kroger directed, and Swift and U.S. Xpress agreed, not to hire, recruit, solicit, or employ former Quickway drivers...."); *id.* ¶ 5 ("Kroger instructed Swift and U.S. Xpress not to hire, recruit, solicit, or employ former Quickway drivers, and Swift and U.S. Xpress agreed not to not to hire, recruit, solicit, or employ these drivers."). The Amended

4

Complaint alleges on information and belief that Kroger may have issued this directive "to reduce the percentage of drivers represented by organized labor...." *Id.* ¶ 33.

Plaintiffs allege they applied to work for the Trucking Defendants on the "new Kroger contracts," *id.* ¶ 4, but, when they did, they were informed of Kroger's instruction not to hire former Quickway drivers, *id.* ¶ 6. Plaintiffs allege they were told this was "a gentleman's agreement" that "came from the top." *Id.* ¶¶ 6, 32.

> **C.   The Amended Complaint Attempts to Make This Vertical Arrangement Horizontal by Alleging Kroger Operates Its Own Proprietary Trucking Fleet "Elsewhere."**

Even though the Amended Complaint clearly describes the alleged no-hire directive as an instruction imposed "from the top" by Kroger on its carriers, plaintiffs attempt to turn that directive into a horizontal conspiracy by alleging that Kroger hires drivers for its own proprietary trucking fleet, which delivers products "elsewhere," Am. Compl. ¶ 24—*i.e.*, not through the former Quickway terminals in Shelbyville, Indiana, and Lynchburg, Virginia (where plaintiffs allege the no-hire directive applied) and not on "the dedicated routes those terminals served," *id.* ¶ 39.

Specifically, plaintiffs allege that, "[u]pon information and belief, ... Kroger directly employs commercial drivers holding CDL [commercial driver's licenses] at and from its own facilities elsewhere in Indiana—including in the Indianapolis area and at locations within the same regional driver-labor market as Shelbyville, such as Seymour and Bluffton, Indiana—and competes there for the labor of experienced grocery-haul drivers." *Id.* ¶ 24.a.

As for the Lynchburg area, plaintiffs allege that "Kroger, directly and through its other affiliated brands (including Harris Teeter), employs a private fleet of CDL drivers to perform dedicated grocery and retail hauling to and from its distribution centers and stores throughout Virginia and the Mid-Atlantic." *Id.* ¶ 24.b. (Plaintiffs have not alleged that "Harris Teeter" or the

other "affiliated brands" are the same entity as Kroger, nor have plaintiffs named those unidentified "affiliated brands" as defendants.)

**D.    The Amended Complaint Alleges No Actual Horizontal Agreement Among Competitors.**

Notable is what the Amended Complaint does *not* allege. It does not allege that Kroger hires drivers at Quickway's former Shelbyville, Indiana, and Lynchburg, Virginia terminals—only that Kroger does so at its own facilities "elsewhere in Indiana" and that Kroger drivers "perform dedicated grocery and retail hauling to and from its distribution centers and stores throughout Virginia and the Mid-Atlantic." Am. Compl. ¶ 24. Plaintiffs do not allege that Kroger's in-house driver jobs are comparable to jobs servicing the former Quickway routes—and plaintiffs do not allege that Kroger in-sourced any former Quickway routes.

In fact, the Amended Complaint affirmatively alleges that driver jobs for former-Quickway and non-former-Quickway routes are *not* interchangeable substitutes. Plaintiffs describe the relevant market as that for "commercial drivers within the Shelbyville, IN market, the Lynchburg, VA market, as well as the market for other routes previously served by Quickway," and assert that "[d]rivers selling their labor in these markets do not have a reasonable and viable alternative market in which they can operate," because, among other reasons, "[o]perating in other markets would result in drivers being pulled away from their communities and would extend their commute radius or require these drivers to move to over-the-road routes that would prevent them from being home nightly like many former Quickway drivers delivering for Kroger were able to do." *Id.* ¶¶ 37-38. That is why "[i]t has generally been the practice within these markets to hire locally…." *Id.* ¶ 38.

Most significantly, the Amended Complaint does not allege that Kroger agreed with the Trucking Defendants that *it* would not hire former Quickway drivers. The only alleged

6

"agreement" is a "directive" from Kroger to two carriers about whom those two carriers would hire. *Id.* ¶ 31. The Amended Complaint does not even allege that the Trucking Defendants agreed not to hire former Quickway drivers **generally** across their respective business operations; the agreement is only alleged to have covered "in whole or in part, the same geographic service territory and routes previously serviced by Quickway," *id.* ¶ 29—that is, on the "Kroger contracts," *id.* ¶¶ 4, 23. In short, there is no agreement among Kroger, Swift Transportation Services, Swift Transportation Co. of Arizona, and U.S. Xpress about anything.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In applying this standard, "courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process." *Medpace Inc. v. AVM Biotechnology, Inc.*, 2026 WL 1256063, at *2 (S.D. Ohio May 7, 2026). The Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But legal conclusions "are open to scrutiny" and "must be plausible considering the factual allegations made." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022).

## IV. ARGUMENT

Plaintiffs allege a *per se* antitrust claim but no *per se* unlawful conduct. They allege only a vertical directive from Kroger (at one level of the distribution chain) to its carriers (at another

7

level). Courts analyze vertical restraints under the rule of reason. Because plaintiffs neither attempt nor include allegations to support a rule of reason claim, the Court should dismiss the Amended Complaint.

Artful pleading cannot turn a vertical "directive" "from the top" into a horizontal agreement among competitors. The Amended Complaint contains no allegation that Kroger does its own shipping through the former Quickway terminals or on the Quickway routes where plaintiffs worked, and plaintiffs affirmatively allege that former Quickway routes are not interchangeable with other routes. Plaintiffs do not allege that ***Kroger*** agreed that ***it*** would not hire former Quickway drivers for its own trucking fleet. In short, it is not alleged that Kroger's operation of its own fleet "elsewhere" through its own distribution centers has any effect on this case.

The *per se* rule is narrow by design. It exists for those categories of restraints that experience shows always harm competition. It is not for manifestly vertical relationships among entities at different levels of the distribution chain. Such restraints must be analyzed under the rule of reason. Because plaintiffs attempt only a *per se* claim, and that claim fails, the Amended Complaint should be dismissed.

## A. The Alleged Restraint Is Vertical and Subject to the Rule of Reason.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. A violation of Section 1 requires proof of: (1) an agreement; (2) affecting interstate commerce; (3) that unreasonably restrains trade. *See White & White, Inc. v. American Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983). "Because every contract could be construed as a restraint of trade, the Supreme Court has held that for a claim to be actionable under the Sherman Act, the restraint challenged must be 'unreasonable.'" *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d

8

462, 469 (6th Cir. 2005) (quoting *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 98 (1984)).

To determine if a restraint is unreasonable, the first step is to select the mode of analysis: the *per se* rule or the rule of reason. *See Nat'l Hockey League Players Ass'n*, 419 F.3d at 469. Which rule applies to a given restraint "is a question of law" for the court. *In re Southeastern Milk Antitrust Litig.*, 739 F.3d 262, 271 (6th Cir. 2014); *see also Medical Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 727 (6th Cir. 2019) ("Whether challenged conduct belongs in the *per se* category is a question of law."). If the "plaintiff fail[s] to make a threshold showing that the challenged conduct ha[s] the characteristics necessary to justify *per se* condemnation, rule of reason analysis should apply instead." *Id.* at 728. In particular, where "the plaintiff himself has tethered the viability of his pleading to the application of either the *per se* or 'quick look' rules of decision," an analysis of whether the plaintiff's theory is viable is "amenable to analysis at the pleading stage." *Ogden v. Little Caesar Enterprises, Inc.*, 393 F. Supp. 3d 622, 631 (E.D. Mich. 2019).

*Per se* illegality under antitrust law is limited to certain narrow categories of restraints that are "manifestly anticompetitive," "lack … any redeeming virtue," and "always or almost always tend to restrict competition and decrease output." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007). Examples are "horizontal price fixing, market allocation, group boycotts[, and] tying arrangements." *Southeastern Milk*, 801 F. Supp. 2d 705, 716 (E.D. Tenn. 2011). "[M]ost" antitrust claims are not analyzed under the *per se* rule but under the rule of reason. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Thus "the rule of reason is the default position[.]" *Southeastern Milk*, 739 F.3d at 273. And in the Sixth Circuit, there is "an automatic presumption

9

in favor of the rule of reason standard." *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005).

In particular, "vertical" restraints are subject to the rule of reason, not the *per se* rule. *Southeastern Milk*, 739 F.3d at 272. "Vertical" restraints are "agreements between parties 'at different levels of the market structure, such as manufacturers and distributors'" *Id.* (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 (6th Cir. 2008)). Such restraints "have more redeeming qualities (*e.g.*, allowing for distribution efficiencies)," making *per se* treatment inappropriate. *Id.*

For example, in *Southeastern Milk*, the plaintiffs alleged a conspiracy involving two processed milk bottlers (Dean Foods and NDH) and a raw milk supplier, DFA. 739 F.3d at 269. The raw milk supplier (DFA) allegedly used its ownership stake in one of the bottlers (NDH) to cause that bottler to lose money and shutter plants in exchange for increased access with the other bottler (Dean) to supply raw milk to bottling plants previously supplied by others. *Id.* The Sixth Circuit determined that the alleged conspiracy had to be scrutinized under the rule of reason, not the *per se* rule. *Id.* at 272-74. "[T]he essence of the agreement" was a vertical one "between Dean in its role as a processor of bottled milk and DFA in its role as a supplier of raw milk." *Id.* at 272. The court also rejected the plaintiffs' argument to construe the conspiracy as a horizontal one between the two bottlers (Dean and NDH) because the raw milk supplier was "the *sine qua non* for [the] conspiracy," and, thus, "the restraint at issue appear[ed] to involve a vertical relationship," mandating the rule of reason. *Id.* at 273.

A vertical restraint is exactly what plaintiffs allege here. Kroger operates a "supermarket chain[]," Am. Compl. ¶ 17, while the Trucking Defendants are "truckload carrier[s]," *id.* ¶¶ 18-19. Kroger purchased "transportation services" from the Trucking Defendants. *Id.* ¶ 29. In the context

10

of that arrangement, Kroger allegedly "instructed," *id.* ¶ 32, or "directed," *id.* ¶ 1, the Trucking Defendants not to hire former Quickway drivers. That alleged restraint ran from Kroger (at one level of the market) to the Trucking Defendants (at another). That is vertical. Since "the restraint at issue appears to involve a vertical relationship," the rule of reason applies. *Southeastern Milk*, 739 F.3d at 273.

Plaintiffs do not allege that the Trucking Defendants conspired with each other, or that the Trucking Defendants asked Kroger to impose a no-hire directive for the Trucking Defendants' benefit. All that has been alleged is a "from the top" directive, Am. Compl. ¶ 6, from Kroger to its carriers to further ***Kroger's*** interests—that is, that Kroger "is the *sine qua non* for this conspiracy," *Southeastern Milk*, 739 F.3d at 273. Such a top-down directive is vertical and does not state a *per se* claim.

**B.      Plaintiffs Do Not Appear to Be Attempting Hub-and-Spoke Allegations, but Even If They Were, Such a Claim Fails.**

Plaintiffs do not appear to be attempting a "hub and spoke" claim—that is, that Kroger allegedly organized a horizontal conspiracy among Swift Transportation Services, Swift Transportation Co. of Arizona, and U.S. Xpress. To the extent plaintiffs do attempt such a claim, it fails because plaintiffs have not alleged the "rim."[4]

---

[4] In addition, Swift Transportation Services, Swift Transportation Co. of Arizona, and U.S. Xpress are all wholly owned indirect subsidiaries of Knight-Swift Transportation Holdings, Inc., and are thus incapable of conspiring with each other as a matter of law. *See Total Benefits*, 552 F.3d at 435 ("The Supreme Court has held that a parent company and its wholly owned subsidiaries are incapable, as a matter of law, of conspiracy." (citing *Copperweld*, 467 U.S. at 769)); *id.* ("This Court has expanded that position to include sister companies with the same parent." (citing *Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co.*, 833 F.2d 606, 611 (6th Cir. 1987))). This Court may consider Knight-Swift's 2025 Form 10-K filed with the Securities & Exchange Commission under the motion to dismiss standard. *Lim v. Hightower*, 2025 WL 2965692, at *5 (6th Cir. Oct. 21, 2025) ("Because SEC filings are typically 'not subject to reasonable dispute,' Fed. R. Evid. 201(b), courts routinely take judicial notice of such filings." (collecting cases)); *Newtyn Partners, LP v. Alliance Data Systems Corporation*, 165 F.4th 947, 969 (6th Cir. 2026) (rejecting the plaintiff's "request that [the court] ignore the [SEC filings] as unfit for judicial notice" since courts

11

"There is no special exception for applying *per se* status just because there is a hub and spoke conspiracy; the complaint still must show *some* horizontal relationship." *Total Benefits*, 552 F.3d at 435 (emphasis in original). "[T]he critical issue for establishing a *per se* violation with the hub and spoke system is how the spokes are connected to each other"—the so-called "rim." *Id.* at 435-36. A "rimless theory" fails to plead a *per se* violation. *Id.* at 436.

Here, "the rim holding everything together is missing. No agreements are identified between competitors." *Id.* at 435-36. Plaintiffs do not allege that Swift Transportation Services, Swift Transportation Co. of Arizona, and U.S. Xpress agreed *with each other* not to hire former Quickway drivers, or that the Trucking Defendants asked Kroger to impose such restrictions to further the Trucking Defendants' interests. To the contrary, plaintiffs repeatedly aver that the no-hire directive came from Kroger to further Kroger's interests. Am. Compl. ¶ 33. A "rimless theory" fails to allege a *per se* hub-and-spoke conspiracy. *Total Benefits*, 552 F.3d at 436.

## C. Plaintiffs' Attempt to Fit a Manifestly Vertical Restraint Into a *Per Se* Box Fails.

Plaintiffs cannot change the simple, admitted fact that the relationship between Kroger and its carriers is vertical. Plaintiffs try to cram that vertical relationship into a *per se* box, but their efforts fail because plaintiffs do not allege a horizontal agreement among competing buyers of labor. Plaintiffs allege, at most, unrelated shipping by Kroger through its own distribution centers. That is not enough to plausibly allege a *per se* unlawful horizontal conspiracy. A supermarket contracting with third-party logistics companies to deliver products to its own stores is not in the

---

"generally 'consider the full text of … SEC filings … even if not attached' to the complaint when deciding Rule 12(b)(6) motions"). That form identifies all the Trucking Defendants as subsidiaries of Knight-Swift. *See* **Tab A**, at 275 (Exhibit 21.1); *id.* at 3 (noting the "acquisition of 100% of the securities of U.S. Xpress on July 1, 2023"). Knight-Swift's 10-K can also be viewed through the SEC's EDGAR system at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001492691/000149269126000016/knx-20251231.htm.

narrow category of restraints that experience shows are always harmful to competition. Such arrangements are essential for interbrand competition.

### 1. Plaintiffs Fail to Allege an Agreement Among Competitors.

A horizontal restraint is one "between competitors at the same level of the market structure." *Southeastern Milk*, 739 F.3d at 272 (6th Cir. 2014) (quoting *Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 F. App'x 181, 191 (6th Cir. 2001)). Plaintiffs fail to allege direct competition between Kroger and the Trucking Defendants in a plausibly defined market.

Plaintiffs assert that Koger and its third-party carriers compete because Kroger has its own proprietary trucking fleet, which ships products between other (mostly unidentified) Kroger distribution centers and supermarkets. Plaintiffs do not allege that Kroger does its own proprietary shipping: (1) on any former Quickway route, (2) from the Shelbyville or Lynchburg terminals, or (3) along any route or through any terminal operated by the Trucking Defendants. Beyond those conspicuous omissions, plaintiffs' allegations about the alleged labor market are notably (and perhaps intentionally) vague. They describe Quickway's Shelbyville, Indiana, and Lynchburg, Virginia terminals (where Kroger is not alleged to have in-sourced shipping) as "markets" unto themselves, while also suggesting that the affected "markets" may extend to other unspecified "routes previously served by Quickway" (again, not in-sourced by Kroger) or more broadly to "experienced drivers with a CDL." *Id.* ¶¶ 36-37. A bankrupt carrier's terminals and routes are not markets unto themselves.

In fact, plaintiffs' allegations undercut any suggestion that Kroger's in-sourced shipping routes could be considered part of the same labor market as former Quickway routes. They allege that "[t]he unlawful agreement suppressed competition for commercial drivers within the Shelbyville, IN market, the Lynchburg, VA market, as well as the market for other routes previously served by Quickway," *id.* ¶ 37, and that "[d]rivers selling their labor in these markets

13

do not have a reasonable and viable alternative market in which they can operate," *id.* ¶ 38. Thus, plaintiffs themselves view the former Quickway routes as unique and not substitutable with jobs "elsewhere" in Indiana and Virginia.

It is particularly unclear what role the State of Michigan plays here, if any. Michigan is mentioned in some allegations regarding the market definition (*e.g.*, Am. Compl. ¶ 39), but no plaintiff is alleged to work there, or near there, and no Trucking Defendant is alleged to have contracted for Quickway routes there.

Even at the pleadings stage, this does not plausibly make out a horizontal agreement among competitors in the same labor market. "[A] plaintiff alleging a horizontal restraint must at least define the market and its participants …." *Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558-59 (8th Cir. 1998); *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) ("[I]t is an element of a *per se* case to describe the relevant market in which we may presume the anticompetitive effect would occur."). "[T]he fact that market definition generally requires discovery has not prevented this court, and others, from affirming grants of motions to dismiss on the basis of an insufficiently pled or totally unsupportable proposed market." *Michigan Div.-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*, 524 F.3d 726, 733 (6th Cir. 2008). And a court may reject "pleading maneuvers … used for the purpose of creating a fictitious market." *Id.* (quoting *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 633 (5th Cir. 2002)). Plaintiffs have alleged, at most, that Kroger does some, unrelated shipping at other locations with no alleged relationship to any of the conduct underlying plaintiffs' claims.

For these reasons, plaintiffs have not alleged a horizontal agreement among competitors. They have alleged a one-way, top-down directive from Kroger to entities with which Kroger

14

contracted to obtain logistics services. That is a vertical arrangement, and the *per se* rule does not apply to it.

> **2.** **The *Per Se* Rule Is Limited to Specific, Well-Understood Restraints. Bespoke, Multi-Level, or "Dual Distribution" Restraints Implicate the Rule of Reason.**

Even if plaintiffs had plausibly alleged ***some*** horizontal competition between Kroger and the Trucking Defendants, that would not be enough to apply the *per se* rule, which does not apply to mixed restraints with vertical aspects.

The *per se* rule is limited to "clear cut cases," *Southeastern Milk*, 739 F.3d at 273, which is why courts apply it "reluctantly and infrequently," *Ogden*, 393 F. Supp. 3d at 633. It condemns only those restraints that "considerable experience" has shown to be always anticompetitive. *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 9 (1979). To apply the *per se* rule, a court must be able to "predict with confidence that the rule of reason will condemn it," *Khan*, 522 U.S. at 10, and the restraint must be "so unreasonably anticompetitive that [it] present[s] [a] straightforward question[] for [the] reviewing court[]," *Southeastern Milk*, 739 F.3d at 273.

By contrast, an agreement with "substantial vertical elements" is analyzed under the rule of reason even if it is also "horizontal" in some "way." *Southeastern Milk*, 739 F.3d at 272-73. Thus, "the rule of reason … can be applied to horizontal restraints as well if they do not fit into existing categories of *per se* violations." *Id.* at 273; *see also Ogden*, 393 F. Supp. 3d at 633 ("[H]orizontality alone does not necessarily justify invocation of the *per se* rule …."). Even in the face of some horizontal aspects, "the analysis of any agreement having some vertical component is complex and not amenable to a *per se* approach." *Ogden*, 393 F. Supp. 3d at 634.

In particular, "dual distribution arrangements"—that is, where a supplier both contracts for third-party distributors and handles its own distribution in some areas—"have repeatedly been analyzed as vertical, not horizontal." *Hesco Parts, LLC v. Ford Motor Co.*, No. 02-cv-736, 2006

15

WL 2734429, at *5 (W.D. Ky. 2006) (quoting *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 244 n.1 (2d Cir. 1997)). "[T]he fact that a supplier also engages in distribution does not make a restraint 'horizontal.' Accordingly, vertical restraints involving dual distribution will be analyzed in the same manner as other vertical restraints." *Int'l Logistics Grp., Ltd. v. Chrysler Corp.*, 884 F.2d 904, 906 (6th Cir. 1989).

Thus, for example, where an automaker (Chrysler) imposed restrictions on its distributers regarding the resale of replacement parts, that was a "vertical" restraint "directed to competitors at different levels of competition," even though "some minimal horizontal competitive effects may have resulted" and "even though Chrysler, the manufacturer, was also a distributor." *Int'l Logistics*, 884 F.2d at 906. Since such a restraint is "imposed vertically," the rule of reason applies. *Davis-Watkins Co. v. Serv. Merch.*, 686 F.2d 1190, 1197-98 (6th Cir. 1982); *see also Hesco Parts*, 2006 WL 2734429, at *4 ("To the extent that Visteon or Visteon distributors sold replacement parts to Ford dealerships, Visteon and Ford were in direct competition for the sale of those parts. [The plaintiff] would have the court find that this places Visteon and Ford in a horizontal arrangement to restrain trade. However, the inquiry must go further than the mere fact that Visteon also sells some replacement parts for Ford-brand vehicles."); *Gen. Aviation, Inc. v. Garrett Corp.*, 743 F. Supp. 515, 519 (W.D. Mich. 1990) ("Given the dual distributorship situation present in this case, this Court is of the belief that application of a *per se* analysis would be inappropriate as a matter of law.").

The same analysis applies here. The alleged restraint "appears to involve a vertical relationship"—namely, the relationship between Kroger and its third-party carriers—"thus requiring the Court to apply the rule of reason." *Southeastern Milk*, 739 F.3d at 273. It is not enough that plaintiffs claim to have identified some horizontal competition between Kroger and

16

the Trucking Defendants outside the areas formerly serviced by Quickway. That unrelated horizontal competition is not alleged to have played any role in the restraint plaintiffs challenge, and plaintiffs do not allege that Kroger ever agreed it would not hire former Quickway drivers for its own shipping "elsewhere." Am. Compl. ¶ 24.a. Kroger's own shipping has nothing to do with this case.

Moreover, plaintiffs' theory—that it is *per se* unlawful for Kroger to instruct its carriers on who may drive for Kroger-contracted routes—would have extraordinary implications. The *per se* rule forecloses any "consideration … [of] the intent behind the restraint, … any claimed pro-competitive justifications, or … the restraint's actual effect on competition," *Hobart-Mayfield*, 48 F.4th at 666, meaning plaintiffs' theory would bar **any** directive from Kroger to its carriers requiring, *e.g.*, drivers to have minimum years of experience or any other qualifications that might enhance Kroger's business but narrow the labor pool. A "rule [that] would proscribe a significant amount of procompetitive conduct" is "ill suited for *per se* condemnation." *Leegin*, 551 U.S. at 894.

Finally, plaintiffs cannot rest on a mere label—"horizontal"—since "[m]ere labels do not alter the essential nature of the economic relationship." *Hesco Parts*, 2006 WL 2734429, at *5 (quoting *Electronics Commc'ns Corp. v. Toshiba America Consumer Prods., Inc.*, 129 F.3d 240, 244 n.1 (2d Cir. 1997)); *see also Medical Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 2017 WL 3433131, at *2 (S.D. Ohio 2017) ("[T]he fact that a challenged restraint is labeled by MCEP as a 'group boycott' does not necessary mean that it is automatically subject to *per se* condemnation."); *Broadcast Music*, 441 U.S. at 8 ("[E]asy labels do not always supply ready answers."); *Southeastern Milk*, 739 F.3d at 273 ("Courts cannot act perfunctorily when

17

distinguishing restraints that merit a *per se* approach from those that deserve rule of reason analysis ….”). The pleaded *facts* show an alleged restraint that is manifestly vertical.

### D. Plaintiffs Do Not Plead a Rule of Reason Claim.

Finally, without a valid *per se* claim, plaintiffs have no claim, since they do not allege a claim under the rule of reason.

“The rule of reason requires courts to conduct a fact-specific assessment of ‘market power and market structure ... to assess the [restraint]’s actual effect’ on competition.” *Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)). Such allegations are entirely lacking here, and, indeed, it does not appear that plaintiffs even try to allege a rule of reason claim. Plaintiffs make one conclusory allegation that Kroger and/or the Trucking Defendants have market power in the driver labor market but plead no facts that could support that conclusion. Am. Compl. ¶ 33. There are no allegations about other participants in that market (and, indeed, plaintiffs previously alleged an additional market participant, Werner Trucking Company, but dropped Werner from this iteration of their pleading). There are no allegations about cross-elasticity of demand, barriers to entry, or any of the numerous other factors that bear on whether a restraint harms competition under the rule of reason.

“[A] plaintiff must satisfy each element of the *per se* or rule of reason *prima facie* tests, whichever is applicable, in its allegations in order to survive pre-trial termination.” *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 344 (6th Cir. 2006). Courts dismiss complaints alleging only a defective *per se* claim. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 7 & n.2 (2006) (declining to apply the rule of reason because plaintiff exclusively pursued a *per se* claim); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 317 (3d Cir. 2010) (“While pleading exclusively *per se* violations can lighten a plaintiff’s litigation burdens, it is not a riskless strategy. If the court

18

determines that the restraint at issue is sufficiently different from the *per se* archetypes to require application of the rule of reason, the plaintiff's claims will be dismissed."); *Expert Masonry*, 440 F.3d at 348 ("[T]he plaintiff, apparently believing that the cause of action would be analyzed under the *per se* rules, did not allege that the defendants possessed market power, or identify any relevant geographic or product markets affected by the purported scheme…. Therefore, [plaintiff] failed to state a *prima facie* violation of Section 1 ….").

The rule of reason applies to the alleged agreement. But the Amended Complaint lacks the allegations to support a claim under the rule of reason.

## V.      CONCLUSION

For the foregoing reasons, Kroger respectfully asks this Court to dismiss plaintiffs' Amended Complaint.

Respectfully submitted,

**DINSMORE & SHOHL LLP**

July 16, 2026

By: /s/ *Jeremy D. Smith*
Jeremy D. Smith
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
T: (513) 977-8348
Jeremy.Smith@Dinsmore.com

Peter M. Ryan (admitted *pro hac vice*)
Jason A. Kurtyka
Owen E. Healy (admitted *pro hac vice*)
**COZEN O'CONNOR**
1650 Market Street, Suite 2800
Philadelphia, PA 19103
T: (215) 665-2000
pryan@cozen.com
jkurtyka@cozen.com
ohealy@cozen.com

*Counsel for Defendant The Kroger Co.*

19

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **The Kroger Co.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Under Rule 12(b)(6) of the Federal Rules of Civil Procedure** was served on July 16, 2026, via the Court's CM-ECF electronic filing system on the following counsel of record for Plaintiffs:

Alyson Steele Beridon
**Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC**
600 Vine Street, Suite 2720
Cincinnati, Ohio 45202
alyson@hsglawgroup.com

Benjamin A. Gastel
**Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC**
1920 Adelicia Street, Suite 300
Nashville, TN 37212
ben@hsglawgroup.com

/s/ *Jeremy D. Smith*
Jeremy D. Smith